WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Cook, | No. CV-21-01027-PHX-ESW |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Lisa Cook's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her applications for supplemental security income and disability insurance benefits. The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction. (Doc. 15).

After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 24, 26, 27), the Court finds that the Administrative Law Judge's ("ALJ") decision contains harmful legal error. For the reasons explained in herein, the decision is reversed and the case is remanded to the Commissioner of Social Security for an immediate award of benefits.

# I. LEGAL STANDARDS

## A. Disability Analysis: Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act also provides for supplemental security income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382. To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id*.

To decide if a claimant is entitled to Social Security disability benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.
>
> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f), 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court

---

[2] *Parra*, 481 F.3d at 746.

considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. DISCUSSION

### A. Procedural History

Plaintiff filed concurrent applications for benefits in June 2014 alleging disability beginning July 15, 2012. (A.R. at 436-52). Plaintiff alleged disability resulting from bipolar disorder, posttraumatic stress disorder, major depressive disorder, attention deficit disorder, and anxiety disorder. (A.R. at 505, 516). The Commissioner denied Plaintiff's claims at the initial and reconsideration phases of administrative review (A.R. at 189-196, 201-206), and Plaintiff timely requested a hearing before an ALJ. (A.R. at 207-209). ALJ Earl C. Cates, Jr. presided over a hearing on Plaintiff's claims in October 2016. (A.R. at 77-101). ALJ Cates ordered Plaintiff to undergo additional independent examinations and return for a supplemental hearing. (A.R. at 98-99, 266-70). ALJ Cates held a supplemental

hearing on July 27, 2017. (A.R. at 51-74). In April 2018, he issued an unfavorable decision (A.R. at 165-77), and Plaintiff timely appealed. (A.R. at 327-31).

In December 2018, the Appeals Council remanded the claims back to an ALJ for further evaluation of Plaintiff's symptoms, her maximum residual functional capacity, the opinion evidence, and her past relevant work, as well as to obtain additional testimony from a vocational expert ("VE") as to whether Plaintiff acquired skills transferable to other occupations. (A.R. at 186-87).

Upon remand, Plaintiff was instructed to undergo additional consultative examinations with psychologist Stephen C. Gill, Ph.D. (A.R. at 4247-56) and family physician Richard M. Palmer, M.D. (A.R. at 4258-71). A hearing on remand before ALJ Cates was held on December 17, 2019. (A.R. at 4660-97). In September 2020, a supplemental hearing on remand was held before ALJ Kelly Walls. (A.R. at 4616-59). At that hearing, the Plaintiff and a VE testified. (A.R. at 4630-58). On November 27, 2020, ALJ Walls found that Plaintiff was not disabled through June 30, 2015 (the date last insured). (A.R. at 38). ALJ Walls, however, found that Plaintiff was disabled beginning on July 8, 2019, which was the date Plaintiff's age category changed. (A.R. 37).

### B. The ALJ's Application of the Five-Step Disability Analysis

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 15, 2012 (the alleged disability onset date). (A.R. 20). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: alcohol dependence, opioid dependence, "personality disorder not otherwise specified with avoidant, dependent, and passive-aggressive features," dysthymia, bipolar disorder, attention deficit hyperactivity disorder, major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder; panic disorder without agoraphobia; lumbar and

cervical degenerative disc disease, left carpal tunnel syndrome, and osteoarthritis of the right thumb.  (A.R. 20).  The ALJ's step two determination is undisputed.

### 3. Step Three: Presence of Listed Impairment(s)

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 21).  Neither party disputes the ALJ's determination at this step.

### 4. Steps Four and Five:  Capacity to Perform Past Relevant Work and Other Work

The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that Plaintiff

> can occasionally reach overhead bilaterally and frequently handle and finger bilaterally.  In addition, she is able to perform simple, routine tasks, and make simple, work-related decisions in an environment with few changes and free from fast-paced production requirements like those found in assembly line work.  Finally, the claimant can have occasional interaction with the public.

(A.R. 23).

After considering Plaintiff's RFC, the ALJ determined that Plaintiff is unable to perform her past relevant work as an animal caretaker and nurse assistant.  (A.R. 34). Although Plaintiff does not challenge the ALJ's determination that Plaintiff is unable perform her past work, Plaintiff asserts that the ALJ's decision does not adequately consider all work-related limitations.  Plaintiff asserts that the ALJ improperly rejected the opinions of examining psychologist Colin Joseph, PhD and Plaintiff's treating physician, Roger Nutt, MD.  (Doc. 24 at 10-15).

Considering the limitations from Plaintiff's RFC and the VE's testimony, the ALJ concluded that prior to July 8, 2019, Plaintiff could perform the requirements of representative occupations such as Routing Clerk, Office Helper, and Housekeeper Cleaner.  (A.R. at 36-37).  However, the ALJ found that effective July 8, 2019, under

Medical-Vocational Rule 202.06,³ Plaintiff was disabled as Plaintiff's age category changed to an individual of advanced age. (A.R. at 37). Plaintiff challenges the ALJ's determination that other work existed in significant numbers that Plaintiff could perform prior to July 8, 2019. (Doc. 24 at 16-22).

### C. The ALJ Failed to Give Specific and Legitimate Reasons Supported by Substantial Evidence for Discounting the Opinions of Colin Joseph, PhD and Roger Nutt, MD

For disability claims filed before March 27, 2017, the Ninth Circuit recognizes three categories of physicians in a Social Security disability claim: treating physicians, examining physicians, and non-examining physicians.⁴ *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is afforded the most weight. *Id.* (citations omitted). An ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id.* at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating or examining physician's opinion is contradicted by other evidence, however, the ALJ must provide only specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830; *Bayliss*, 427 F.3d at 1216.

### 1. Consultative Examiner Colin Joseph, PhD

In October 2014, licensed psychologist Colin Joseph, PhD interviewed and examined Plaintiff on referral from the Arizona Department of Economic Security and Social Security Disability Determination Office. (A.R. at 3529-33). Dr. Joseph documented Plaintiff's history of mental health treatment and her reported symptoms, such as anxiety, panic, and depression. (A.R. at 3529-31). Dr. Joseph observed that Plaintiff

---

³ Medical-Vocational Rule 202.06 states that an individual limited to light work is disabled where he is of advanced age (55 or older), has a high school or greater education that does not provide for direct entry into skilled work, and has skilled or semi-skilled past relevant work from which no skills are transferrable to other jobs the individual can perform. Appendix 2 to Subpart P of 404.

⁴ Regulations applicable to disability claims filed on or after March 27, 2017 effectively eliminate this hierarchy of medical opinions. *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). Because Plaintiff filed her claims before that date, the prior regulations codifying the hierarchy of medical opinions apply here. 20 C.F.R. § 404.1527.

avoided eye contact and presented with "a depressed mood and completely flattened affect," a "tired, somnolent" appearance, and "prominent psychomotor retardation." (A.R. at 3532). Regarding her substance abuse history, Plaintiff reported that she became dependent on pain medications following a motor vehicle accident in 2002 but has been sober from pain medications for two-and-a-half years prior to the exam. (A.R. at 3531). Plaintiff "denied any issues with alcohol or other drugs." (*Id.*).

Regarding Plaintiff's functional limitations, Dr. Joseph concluded that Plaintiff "might have some difficulty understanding and remembering complex instruction" and "might require occasional repetition of instruction, to learn new detailed tasks." (A.R. at 3533). Dr. Joseph further noted that Plaintiff's "cognitive processing appears slowed and labored" and concluded that Plaintiff's ability to maintain attention and concentration was "likely to require sustained effort." (*Id.*). As to Plaintiff's capabilities regarding social interaction, Dr. Joseph stated that Plaintiff

> can be expected to be anxious, vigilant and preoccupied with safety issues. She is likely to be sensitive to perceived negativity, criticism judgment [sic]; and respond with exaggerated anxiety; reaching panic level at times. It is unlikely [Plaintiff] would be capable of maintaining emotional stability and appropriate social behavior in a typical work environment.

(*Id.*). Regarding Plaintiff's ability to adapt to changes in the work setting, Dr. Joseph opined that while Plaintiff "appears adequately aware of her environment and should be able to recognize normative workplace hazards[,]" Plaintiff "might respond to such situations with increased anxiety and have difficulty making quick decisions exercising good judgment." (*Id.*).

In ALJ Walls' November 2020 decision, she assigned Dr. Joseph's opinions "little weight." (A.R. at 31). The ALJ found that Dr. Joseph's report "seems to be supported primarily by the claimant's subjective complaints, as no records were reviewed. (A.R. at 32). The ALJ further stated that Plaintiff "was not forthright" with Dr. Joseph regarding "her history, such as the frequency and recency of her substance abuse and alcohol abuse, which indicates that the information on which this opinion is based is inaccurate." (*Id.*).

The ALJ concluded that Dr. Joseph's "opinion is not consistent with the greater record, which shows that at the time this opinion was given, [Plaintiff] was enrolled in and doing well in college, nor is it consistent with the intervening records, which demonstrate [Plaintiff's] condition improved to the point of requiring much less mental health treatment." (*Id.*).

Plaintiff alleges that the ALJ provided legally insufficient reasons for rejecting Dr. Joseph's opinion. (Doc. 24 at 10-13). Plaintiff first argues that it is error for the ALJ to reject a psychologist's opinion for the reason it is based on a claimant's subjective complaints. (*Id.* at 10). Citing Ninth Circuit precedent, Plaintiff argues that a "psychiatric examination being based on a claimant's statements is the very nature of psychiatric examination and an ALJ cannot rely on this fact to support the rejection of medical opinion evidence." (*Id.*) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)). Plaintiff also notes that Dr. Joseph's report discusses observed abnormalities such as Plaintiff's "prominent psychomotor retardation," "slow and monotone speech," apparent slowed and labored cognitive processing upon examination, depressed mood, anxious affect, and avoidant eye contact. (*Id.*).

Next, Plaintiff argues that the ALJ erred by discounting Dr. Joseph's opinions based on discrepancies in Plaintiff's reported substance abuse history because Plaintiff's prior substance use is immaterial to the question of disability. (*Id.* at 11). Plaintiff notes that the ALJ's decision concludes that Plaintiff's psychological symptoms have "not significantly changed since she became sober." (*Id.*) (citing A.R. at 37).

Finally, Plaintiff argues that the ALJ erred by discounting Dr. Joseph's opinions based on Plaintiff's attendance in college. Plaintiff recounts that Dr. Joseph examined her in October 2014 and Plaintiff's educational records show that she failed all classes Plaintiff attempted to take in Spring of 2014. (*Id.*). Plaintiff argues that "[t]he fact that Plaintiff could successfully complete a few introductory courses over the course of three semesters is not evidence of functionality beyond the limitations found by Dr. Joseph, and to the extent Plaintiff's ability to even complete classwork is evidence of functionality, Plaintiff

failed or withdrew from all classes in Fall of 2016 (Tr. 619)." (*Id.* at 12).

Defendant counters it was appropriate for the ALJ to reject Dr. Joseph's opinion on the basis of Plaintiff's inaccurate reporting, noting that while a psychologist may rely upon a claimant's reported symptoms, the ALJ may assign less weight to that doctor's opinion if the claimant's self-report is inaccurate. (Doc. 26 at 8-9). Further, Defendant contends that while the ALJ noted no significant change in Plaintiff's psychological symptoms after her sobriety, the ALJ's analysis of the materiality of Plaintiff's substance abuse applies only to the period she is found disabled, and thus, that it holds no bearing on the period of non-disability from July 15, 2012 to July 7, 2019. (*Id.* at 10). Defendant asserts that the ALJ reasonably relied upon Plaintiff's school activities, as Plaintiff was enrolled for considerable periods of time during the relevant period and at times earned grade-point averages of 3.00 or above. (*Id.* at 11). Defendant also contends that the ALJ was correct to note the declining frequency of Plaintiff's mental health treatment visits, Plaintiff's success in controlling her symptoms, and Plaintiff's benign mental status findings. (*Id.* at 12-13).

The Court finds that Dr. Joseph's report is contravened in the record,[5] and thus, that the ALJ was required to provide only specific and legitimate reasons for rejecting his opinion. *Bayliss*, 427 F.3d at 1216. The Court concludes that the ALJ failed to cite the requisite specific, legitimate reasons supported by substantial evidence for rejecting Dr. Joseph's report.

The ALJ's decision correctly states that Plaintiff's report of prescription drug and alcohol abuse to Dr. Joseph is not consistent with the record. Plaintiff reported to Dr. Joseph that she had been sober from prescription pain medications for two-and-a-half years, and that she had never had any problems with alcohol. (A.R. at 3531). Yet the record shows that this statement was inaccurate. Only a few months prior to Dr. Joseph's examination Plaintiff indicated "periodically binge drinking" (A.R. at 2359) and other

---

[5] Non-examining physicians at initial and reconsideration opined Plaintiff was not as restricted. (A.R. at 112-13, 143-44.)

treatment records reflect a history of alcohol abuse. (A.R. at 1089, 1516, 1542, 1599, 2159). Plaintiff was discharged from a Veterans Affairs facility in June 2013 with a primary diagnosis of opioid dependence. (A.R. at 1399). The ALJ and Plaintiff's counsel discussed these discrepancies at Plaintiff's September 2020 hearing. (A.R. at 4625-29).

Plaintiff persuasively argues, however, that this inconsistency is irrelevant because the ALJ concluded Plaintiff's "symptoms have not significantly changed since she became sober." (A.R. at 37). Indeed, the ALJ concluded that "[t]he same mental limitations would remain in the absence of alcohol and drug abuse, as evidenced by comparing the medical records prior to the [Plaintiff's] sobriety with those after the [Plaintiff's] sobriety, beginning in approximately November 2014." (A.R. at 37). By the ALJ's own rationale, Plaintiff's substance abuse had no material impact on Plaintiff's symptoms and limitations.

Defendant argues that the materiality of substance abuse is evaluated only during periods of disability and, consequently, that the ALJ's conclusions regarding the materiality of Plaintiff's substance abuse applied only to the period beginning July 8, 2019—her established disability onset date. (*Id.* at 10). Defendant is correct that the Commissioner must evaluate the materiality of a claimant's substance abuse only during periods that individual is found to be disabled. *See e.g.*, 20 C.F.R. § 416.935(a); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) ("If, and only if, the ALJ found that Bustamante was disabled under the five-step inquiry, should the ALJ have evaluated whether Bustamante would still be disabled if he stopped using alcohol."). Importantly, however, the ALJ's conclusions with respect to the impact of substance abuse on Plaintiff's mental health symptoms and limitations are still relevant to her evaluation of Dr. Joseph's opinion. The Court will not ignore the ALJ's statement that substance abuse had no material impact on Plaintiff's functioning simply because it was made in a different context. An ALJ's analysis in one section of the decision can inform the ALJ's conclusions in another. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (affirming an ALJ's analysis regarding listed impairments, despite the ALJ's omission of necessary findings in that section of the decision, because the ALJ provided sufficient reasoning elsewhere in

the opinion for his conclusion).

Plaintiff is also correct that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Mental health clinicians "will always depend in part on the patient's self report, as well as the clinician's observations . . . [b]ut such is the nature of psychiatry." *Id.* (citations omitted). Still, an ALJ may reject opinion evidence premised on a Plaintiff's subjective complaints which have also been properly discounted. *E.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). A psychological practitioner's reliance on a claimant's erroneous or inconsistent reports still constitutes a legally sufficient reason to reject that opinion. *See Andrews*, 53 F.3d at 1043 (an ALJ may reject an examining psychologist's opinion based on unreliable self-report); *McCloud v. Saul*, 818 F. App'x 730, 734 (9th Cir. 2020) (unpublished). Importantly, "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citations omitted). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.*

Here, in addition to relying upon Plaintiff's self-report, Dr. Joseph also documented positive mental status findings which informed his opinion. When explaining his conclusions, Dr. Joseph cited Plaintiff's reported history and endorsement of symptoms, along with her clinical presentation. (A.R. at 3532). Dr. Joseph concluded, "[Plaintiff's] reported history *and current presentation* suggest she has managed with mood instability beginning in her childhood years and continuing into her adult years." (A.R. at 3532) (emphasis added). Dr. Joseph documented Plaintiff's "very depressed" and fatigued presentation and exhibition of "prominent psychomotor retardation." (A.R. at 3532). In his mental status examination, Dr. Joseph observed Plaintiff's "completely flattened

affect," that "[s]he remained expressionless throughout the evaluation[,]" and that "[s]he appeared tired, somnolent and as if on the edge of tears." (A.R. at 3532). The ALJ did not provide a basis for the conclusion that Dr. Joseph's opinion was based more heavily on Plaintiff's self-reports, and substantial evidence does not support such a conclusion. *Ghanim*, 763 F.3d at 1162 ("The ALJ offered no basis for his conclusion that these opinions were based more heavily on Ghanim's self-reports, and substantial evidence does not support such a conclusion"). Consequently, this reason is also insufficient.

The ALJ also concluded that Dr. Joseph's opinion was "not consistent with the greater record, which shows that at the time this opinion was given, the claimant was enrolled in and doing well in college . . . ." (A.R. at 32). As Plaintiff argued, this is incorrect. (Doc. 24 at 11). Plaintiff's school transcripts indicate she did not pass any classes in the semester preceding her evaluation with Dr. Joseph. (A.R. at 618-19). The Commissioner argues that this basis for rejecting Dr. Joseph's report was reasonable because the Plaintiff performed well in school during other time periods. (Doc. 26 at 11). This was not the ALJ's rationale. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citations omitted). The ALJ specifically noted "*at the time this opinion was given*, [Plaintiff] was enrolled and doing well in college[.]" (A.R. at 32, emphasis added). Assuming arguendo that the ALJ intended to cite Plaintiff's enrollment and performance in school generally during the relevant period,[6] Plaintiff testified she quit school in 2016 due to increased panic attacks and that class activities would often induce symptoms of anxiety or panic. (A.R. at 4633, 4644). Plaintiff's treatment records support that she experienced difficulties in school related to anxiety and focus and concentration deficits. (A.R. at 2159, 3797).

---

[6] At Plaintiff's September 2020 hearing, ALJ Walls and Plaintiff's counsel discussed her enrollment and performance in school generally. (A.R. at 4629-30.)

- 13 -

Lastly, the ALJ cited to the "intervening records, which demonstrate [Plaintiff's] condition improved to the point of requiring much less mental health treatment." (A.R. at 32). But the ALJ provided no specific evidentiary citation to support this assertion, and the decrease in Plaintiff's mental health treatment visits, standing alone, is insufficient here. As the Ninth Circuit has stated, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Further, the available medical records, including those summarized by the ALJ in her decision, do not clearly support medical improvement. (A.R. at 28-29). Records from the two years prior to Plaintiff's September 2020 hearing reflect she presented as tired and "severely depressed" with a "flat affect" (A.R. at 4250-51), with a depressed mood and poor insight and judgment (A.R. at 4459), and with an anxious and depressed mood. (A.R. at 4376).

For the foregoing reasons, the ALJ failed to provide the requisite specific, legitimate reasons supported by substantial evidence in the record to reject Dr. Joseph's opinions.

### 2. Roger Nutt, MD

As the ALJ's decision recounts, Dr. Roger Nutt completed eight disability forms during the relevant period on Plaintiff's behalf, each supporting Plaintiff's disability. (A.R. at 33, 4034-40, 4180-86, 4225-31, 4243-46, 4349-52, 4353-59, 4605-08, 4609-15). In assigning Dr. Nutt's opinions "limited weight," the ALJ stated that Dr. Nutt is Plaintiff's "primary care physician, not her mental health provider." (A.R. at 33). The ALJ also found that the "extreme limitations" opined by Dr. Nutt are not supported by Dr. Nutt's treatment notes or other records. (*Id.*). The ALJ stated that Plaintiff's

> more severe limitations clearly occurred prior to 2016, as she had four separate inpatient admissions for mental health treatment at the Domiciliary prior to 2015, but she has had no inpatient mental health care since then. Indeed, [Plaintiff] received less mental health treatment and by 2019 did not receive anything resembling the level of care she previously had. The limitations opined by Dr. Nutt are inversely proportional to the mental health care received by [Plaintiff] reflected in the records.

(A.R. 33-34).

The Court finds that the ALJ did not provide specific, legitimate reasons for rejecting Dr. Nutt's several opinions.[7] First, the physician's area of expertise is only one of several factors an ALJ must evaluate under the applicable regulations. *See e.g.*, 20 C.F.R. § 404.1527(c)(1)-(6). The other factors include the length of the treatment relationship, the frequency of examinations, and the consistency and supportability of the physician's conclusions. *Id*. The Ninth Circuit has held that the Commissioner may not reject the opinion of a treating physician merely because he is not a mental health specialist. *Lester*, 81 F.3d 821, 833 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

An ALJ may reject a disabling opinion that is belied by a claimant's course of treatment. Yet, to reiterate, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen*, 100 F.3d at 1465; *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999). Here, while the ALJ observed that Dr. Nutt's conclusions became increasingly extreme with no commensurate increase in Plaintiff's symptoms or treatment visits[8] (A.R. at 33-34), the Court is persuaded by Plaintiff's argument that any claim of medical improvement is "irrelevant to the legitimacy of Dr. Nutt's medical statement that Plaintiff is functionally limited, to a disabling degree, from July 2012 through October 7, 2016 . . . ." (Doc. 24 at 14).

The ALJ's reasoning for rejecting Dr. Nutt's opinions are based on a perceived inconsistency between the severity of Plaintiff's limitations as assessed by Dr. Nutt and the frequency and intensity of Plaintiff's treatment in later years. However, this rationale does not address the legitimacy of Dr. Nutt's conclusions that Plaintiff was disabled as early as

---

[7] As with Dr. Joseph, the Court finds Dr. Nutt's opinions are contravened in the record.

[8] In June 2017, for example, Dr. Nutt assigned to Plaintiff three moderate limitations, five marked limitations, and two extreme limitations. (AR. at 4182-84.) In January 2019, Dr. Nutt assigned 12 extreme limitations (AR. at 4227-29); in October 2019 he assigned 12 extreme limitations (AR. at 4356-57); and in August 2020 he assigned 12 extreme limitations (AR. at 4612-13).

2015.  The ALJ's decision states that "[Plaintiff's] more severe limitations clearly occurred prior to 2016." (A.R. at 33).  Dr. Nutt completed assessments dated as early as January 2015 wherein he concluded Plaintiff suffered varying degrees of "occupational and social impairment" (A.R. at 3536, 3541) and that she suffered from symptoms of depressed mood, anxiety, panic attacks, difficulty establishing effective work and social relationships, and difficulty adapting to stressful circumstances. (A.R. at 3538, 3544).  These limitations are applicable to a period of time when Plaintiff was experiencing a higher level of symptoms.  Consequently, the ALJ's rationale is insufficient.

The ALJ also concluded that Dr. Nutt's treatment notes belie the "extreme limitations" he assigned, but the ALJ cites no specific records undermining Dr. Nutt's conclusions. (A.R. at 33).  Although Defendant asserts that Plaintiff's treatment visits with Dr. Nutt largely pertained to "routine follow-up[s]" to monitor Plaintiff's physical condition "and therefore did not have much direct knowledge of her mental impairments." (Doc. 26 at 16).  However, this rationale is absent from the ALJ decision.  A reviewing court may draw specific and legitimate inferences from an ALJ's decision, but a court cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009); *Magallanes*, 881 F.2d at 755.

Similarly, while the ALJ alluded to inconsistencies between Dr. Nutt's opinions and "the greater record, including other records from the VA," the ALJ omitted any specific citation to that evidence.  (A.R. at 33).  An ALJ must draw a nexus between her conclusions and her factual findings.  *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (citations omitted); *Alter v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04387-PHX-DMF, 2020 WL 3064463, at *13 (D. Ariz. June 9, 2020) ("The ALJ failed to provide the nexus between the evidence she cited and the conclusions she drew from that evidence or to explain why her interpretations rather than those of Dr. Grove were correct.").  Consequently, this Court finds that the ALJ

cited insufficient reasons for rejecting Dr. Nutt's opinions.

The ALJ's failure to provide legally sufficient reasons for discounting Drs. Joseph and Nutt's opinions is harmful error and alone requires remand. The Court therefore does not address Plaintiff's arguments regarding the other alleged errors in the ALJ's decision.

### D. Remand for Additional Proceedings is Appropriate

Ninth Circuit jurisprudence "requires remand for further proceedings in all but the rarest cases." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014). The Ninth Circuit, however, has adopted a test to determine when a case should be remanded for payment of benefits in cases where an ALJ has improperly rejected claimant testimony or medical opinion evidence. *Id*. at 1100-01; *Garrison*, 759 F.3d at 1020. This test is commonly referred to as the "credit-as-true" rule, which consists of the following three factors:

1. Has the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion? *Treichler*, 775 F.3d at 1100-01.

2. Has the record been fully developed, are there outstanding issues that must be resolved before a disability determination can be made, or would further administrative proceedings be useful? *Id*. at 1101. To clarify this factor, the Ninth Circuit has stated that "[w]here there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*.

3. If the improperly discredited evidence were credited as true, would the ALJ be required to find the claimant disabled on remand? *Id*.; *Garrison*, 759 F.3d at 1020.

Where a court has found that a claimant has failed to satisfy one of the factors of the credit-as-true rule, the court does not need to address the remaining factors. *Treichler*, 775 F.3d at 1107 (declining to address final step of the rule after determining that the claimant has failed to satisfy the second step). Moreover, even if all three factors are met, a court retains the discretion to remand a case for additional evidence or to award benefits. *Id*. at 1101-02. A court may remand for further proceedings "when the record as a whole creates

- 17 -

serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. In *Treichler*, the Ninth Circuit noted that "[w]here an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." 775 F.3d at 1105.

The Court finds that the record is fully developed and that there are no outstanding issues of fact to be resolved through further proceedings. At the administrative hearing, the VE testified that there is no work in the national economy for an individual who "would require occasional repetition of instructions to learn new, detailed tasks,: "would not be able to maintain attention or concentration for a two-hour period," "would not be able to work in coordination with or proximity to others without being unduly distracted," "would not be able to respond appropriately to changes in a routine work setting, and "would be unable to sustain ordinary routine work without special supervision." (A.R. at 4655-56). The Court finds that if Drs. Joseph and Nutt's opinions were credited-as-true, the ALJ would be required to find that Plaintiff is disabled prior to July 8, 2019.[9]

The Court does not find any material evidence in the record that creates serious doubt that Plaintiff was in fact disabled beginning on July 15, 2012. Based on the record, the Court finds it inappropriate to remand the case for further proceedings. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the

---

[9] 42 U.S.C. § 413(d)(2)(C) provides that a claimant cannot receive disability benefits if drug or alcohol abuse is "a contributing factor material to the Commissioner's determination that the individual is disabled." Here, the ALJ concluded that the "same mental limitations would remain in the absence of alcohol and drug abuse, as evidenced by comparing the medical records prior to [Plaintiff's] sobriety with those after [Plaintiff's] sobriety, beginning in approximately November 2014." (A.R. at 37).

The ALJ further noted that Social Security Ruling 13-2p requires that when it is not possible to separate the mental restrictions of drug addiction and alcoholism from the restrictions of other mental impairments, a finding of 'not material' is appropriate." (*Id.*). The ALJ found that Plaintiff's "substance abuse disorders cannot be found to be a contributing factor material to the determination of disability because it is not possible to separate the mental restrictions of drug addiction and alcoholism from the restrictions of [Plaintiff's] other mental impairments. Accordingly, [Plaintiff] would still be disabled in the absence of the substance use disorders." (A.R. at 37-38). The Court agrees with Plaintiff's Reply (Doc. 27 at 4) that the ALJ's materiality analysis as to Plaintiff's substance use pertains to the timeframe prior to July 8, 2019. Therefore, further administrative proceedings are unnecessary with respect to a substance use materiality analysis.

issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.") (citation omitted); *Henderson v. Berryhill*, 691 F. App'x 384, 386 (9th Cir. 2017) ("Given this fully developed record, the admission of more evidence would not be 'enlightening,' *Treichler*, 775 F.3d at 1101, and 'remand for the purpose of allowing the ALJ to have a mulligan [does not qualify] as a remand for a 'useful purpose,' *Garrison*, 759 F.3d at 1021."). The Court will remand the case for an immediate award of benefits effective July 15, 2012 (the disability onset date).

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** reversing the portion of the decision of the Commissioner of Social Security finding that Plaintiff was not disabled prior to July 8, 2019 and remanding this case to the Commissioner for an immediate award of benefits effective July 15, 2012.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 28th day of November, 2022.

Honorable Eileen S. Willett
United States Magistrate Judge